UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EQUAL EMPLOYMENT        )
OPPORTUNITY COMMISSION, )
                        )
      Petitioner        )
                        )
v.                      )     Misc. Action No. 24-167 (RJL)
                        )
CAMDEN DEVELOPMENT, INC.,)
                        )
      Respondent        )

**MEMORANDUM OPINION**
December ̲2̲2̲ 2025 [Dkt. #1]

The U.S. Equal Employment Opportunity Commission ("EEOC" or "Commission") seeks enforcement of its administrative subpoena No. WFO-2024-002 ("the subpoena"), against Camden Development Inc. ("Camden"). The EEOC is currently investigating Camden based on allegations that its employment practices violated Title VII. Because the EEOC's subpoena seeks relevant information and is not overly burdensome, the Court will **GRANT** the EEOC's Application to enforce the subpoena.

### I. BACKGROUND

Camden is a mid-sized company that builds and manages apartment communities across the United States. In March 2023, Kayla Smith ("Smith"), a former Washington D.C.-based Camden employee, filed a Charge with the EEOC's Washington Field Office alleging that Camden violated Title VII by subjecting her to sexual harassment and retaliation. *See* Charge of Discrimination ("Charge") [Dkt. #1-2, Attach. A].

Specifically, Smith alleged that Camden promoted a workplace culture of non-consensual touching by showing an orientation video to all new hires that encouraged employees to hug each other. *Id.* The video did not discuss permission or consent. *Id.* One portion of the video, entitled "The Hug Life," describes hugging as a part of Camden's culture, stating that "hugging is simply a part of who we are." Declaration of EEOC Washington Field Office Deputy Director Phillip Hoefs ¶ 12 ("Hoefs Decl.") [Dkt. 1-2]. Other parts of the video show images of Camden employees hugging, as well as audio clips of employees describing Camden's hug culture. *Id.* Smith alleged that Camden's hugging culture enabled her manager to sexually assault her at work. *See* Charge. The manager allegedly locked himself in a room with Smith and asked her for a hug. *Id.* And because of the Camden hugging policy, she complied. *Id.* The hug then escalated into further unwanted kissing and sexual touching. *Id.*

The EEOC initiated an investigation concerning Camden's potentially unlawful employment practices. Through the investigation, it learned that Camden's orientation video was used companywide and that 22 employees across Camden's offices have complained about sexual harassment during the relevant timeframe. Hoefs Decl. ¶ 14. As part of its investigation, the EEOC sent a Request for Information ("RFI") requesting a roster of individuals that Camden employed from March 1, 2019, to December 13, 2023, as well as their contact information, so the Commission could determine whether other employees have been subjected to unwelcome sexual conduct. *Id.* ¶¶ 14, 16. Camden refused the EEOC's request several times, despite multiple deficiency letters from the

EEOC, claiming that the request was unduly burdensome. *Id.* ¶¶ 17–24. Camden would only agree to identify its Washington D.C.-based employees. *Id.*

On July 1, 2024, the EEOC issued the administrative subpoena at issue here, directing Camden to:

> Provide, in an unredacted, sortable Excel spreadsheet, a roster of individuals employed by Respondent from March 1, 2019, to December 13, 2023. For each employee, provide the following:
> a. Full name;
> b. Last known address;
> c. Last known email address;
> d. Last known phone numbers (home and cell).

*Id.* ¶ 25. Camden filed a petition to revoke the subpoena, which the EEOC rejected. *Id.* ¶¶ 26–27. Camden has continued to refuse to comply with the EEOC's subpoena, which the EEOC claims is hampering its investigation. *Id.* ¶ 28.

On December 18, 2024, the EEOC filed an Application, [Dkt. #1], asking this Court to issue an order to show cause for why its administrative subpoena should not be enforced. This Court issued the order to show cause on May 14, 2025. [Dkt. #2]. Camden filed a response to the order, ("Resp. Br.") [Dkt. #3], and the EEOC filed a reply brief asking this Court to enforce the subpoena, ("Petr. Reply Br.") [Dkt. #4].

## II.   LEGAL STANDARD

"A district court's role in a proceeding to enforce an administrative subpoena is extremely limited." *EEOC v. C & P Tel. Co.*, 813 F. Supp. 874, 875 (D.D.C. 1993) (citing *FTC v. Texaco, Inc.*, 555 F.2d 862, 871–72 (D.C. Cir. 1977)). The Court must merely "satisfy itself that the charge is valid and that the material requested is 'relevant' to the

3

charge." *McLane Co. v. E.E.O.C.*, 581 U.S. 72, 76 (2017) (quoting *Univ. of Pa. v. E.E.O.C.*, 493 U.S. 182, 191 (1990)).

Courts have given a generous construction to what material is "relevant" in the context of EEOC subpoena enforcement actions. The Supreme Court recently reiterated that the EEOC has the right to access "'any evidence of any person being investigated or proceeded against that relates to unlawful employment practices covered by' Title VII and is relevant to the charge under investigation." *Id.* "[V]irtually any material that might cast light on the allegations against the employer" is fair game. *E.E.O.C. v. Shell Oil Co.*, 466 U.S. 54, 68–69 (1984). If the material requested is relevant, the district court should enforce the subpoena "unless the employer establishes that the subpoena is 'too indefinite,' has been issued for an 'illegitimate purpose,' or is unduly burdensome." *McLane Co.*, 581 U.S. at 72 n.26; *U.S. Commodity Futures Trading Comm'n v. Ekasala*, 62 F. Supp. 3d 88, 93 (D.D.C. 2014) (quoting *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950).

### III. ANALYSIS

The EEOC's subpoena shall be enforced because it is within the Commission's authority, seeks relevant information, and is not overly burdensome.

*First*, the EEOC has the authority to issue the subpoena. Title VII of the Civil Rights Act of 1964 permits the EEOC to issue a subpoena to obtain evidence from an employer that is relevant to a pending investigation. *McLane Co. v. E.E.O.C.*, 581 U.S. 72, 75–76 (2017). Here, the EEOC is investigating a Charge alleging sexual harassment in violation of Title VII. The subpoena was issued by an appropriate agency official and contains the information required in the EEOC's regulations. *See* Subpoena [Dkt. #1-2, Attach. K].

*Second*, the information the EEOC seeks—the names and contact information of the individuals employed by Camden during the five-year period the hug-forward orientation video was in use—is plainly relevant to the allegations in the Charge. The EEOC is entitled to access "any material that might cast light on the allegations against the employer." *Shell Oil Co.*, 466 U.S. at 68–69. Identifying the names and contact information of current and former Camden employees clearly has the potential to "cast light" on Smith's allegations about Camden's *company-wide* orientation video and hug culture. As the EEOC explained, Camden's employee roster and contact information will allow it to interview employees around the country to understand the extent to which Camden's orientation video promoted a companywide policy requiring non-consensual hugging in the workplace, which allegedly enabled the sexual harassment of Smith and possibly others. *See* Memorandum of Law in Support of Application at 13–15 ("Petr. Mem.") [Dkt. #1-1].

Camden objects to disclosing the names of its employees nationwide, arguing that the request is overly broad and irrelevant to Smith's "geographically limited charge." Resp. Br. at 9–11 [Dkt. #3]. But the EEOC has adequately demonstrated the relevancy of the requested information to its investigation, which extends beyond Camden's D.C. office. The EEOC issued the subpoena after learning that Camden's "hug life" videos were used *nationwide* in new-employee orientations and that Camden had received over twenty sexual harassment complaints from employees *across the country* during the relevant period, including two complaints from employees located in Texas and North Carolina concerning unwelcome hugs or requests for hugs. Petr. Mem. at 15; Petr. Reply Br. at 7.

5

Camden's argument that the subpoena goes beyond the standard articulated in Rule 26(b)(1) is unavailing, since it can point to no binding legal authority holding that the relevancy standard for civil litigation discovery applies in the administrative subpoena enforcement action context. *See* Resp. Br. at 10; Petr. Reply Br. at 5–6. Indeed, many courts have held that the scope of an EEOC investigation may go beyond the specific allegations in the original charge. *See, e.g., EEOC v. Sol Mexican Grill, LLC*, 415 F. Supp. 3d 5, 14 (D.D.C. 2019) ("[T]he EEOC is not limited in its investigation by the allegations in the charge."); *EEOC v. Cambridge Tile Mfg. Co.*, 590 F.2d 205, 206 (6th Cir. 1979) (holding that the EEOC has the power to "investigate a broader picture of discrimination which unfolds in the course of a reasonable investigation of a specific charge").

*Third*, the EEOC's request for Camden's companywide roster and accompanying contact information is not overly vague or unduly burdensome. The information the EEOC seeks is standard and sufficiently specific. And the request is not unduly burdensome because Camden cannot show that compliance with the subpoena "threatens to unduly disrupt or seriously hinder normal operations of a business." *Ekasala*, 62 F. Supp. 3d at 94. Camden concedes that it has the information the subpoena seeks but complains that it is not maintained in the *format* specified by the EEOC. Resp. Br. at 13. While it may be true that the process of compiling the requested data into the requested format will "divert personnel from their regular duties and impose considerable administrative costs on the company," *id.*, Camden has not made the requisite showing that the burden is excessive in terms of time, cost, or other resources. *See Ekasala*, 62 F. Supp. 3d at 94.

Camden also argues that this Court should not enforce the subpoena because another judge dismissed claims Smith brought based, in part, on Camden's hugging policy. Resp. Br. at 14–15. But Camden's claim and issue preclusion arguments fail because, as the EEOC points out, the doctrine of claim and issue preclusions apply only when *successive* litigation has been brought. Petr. Reply Br. at 12–14. *See also Taylor v. Sturgell*, 553 U.S. 880, 892 (2008); *FTC v. Texaco, Inc.*, 555 F.2d 862, 878–881 (D.C. Cir. 1977). No successive litigation has yet been brought, and Camden cannot raise preclusion arguments based on speculation about what future claims the EEOC *might* bring in the future.

Finally, I will **DENY** the EEOC's request to order Camden to pay the costs of instituting this action. Petr. Mem. at 16. Petitioner failed to cite any legal authority to support its request, and courts have denied such requests under similar circumstances. *See, e.g., EEOC v. VisionPro Networks, Inc.*, No. 24-MC-00356, 2024 WL 3643818, at *12 (E.D.N.Y. Aug. 2, 2024*), report and recommendation adopted sub nom. EEOC v. Visionpro Networks, Inc.*, 2024 WL 3875945 (E.D.N.Y. Aug. 20, 2024) (rejecting request for EEOC enforcement costs citing a lack of supporting legal authority).

## IV. CONCLUSION

For the reasons stated above, I will **GRANT** the EEOC's Application for Enforcement and **ORDER** Camden to produce all information requested in the subpoena. I will **DENY** the EEOC's request for costs. An Order consistent with the above accompanies this Memorandum Opinion.

Richard J. Leon
U.S. District Judge